IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN ANDREW DONEY JR.,<br><br>Defendant. | CR 24-157-BLG-SPW<br><br>ORDER |

On March 19, 2025, Defendant Martin Andrew Doney Jr. moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). (Doc. 19; Doc. 20 at 12).

The Government responded on March 31, 2025, arguing that the Court should deny Doney's motion and adhere to the Ninth Circuit's decision in *United States v. Vongxay*, which upheld § 922(g)(1) against a Second Amendment challenge. (Doc. 21 at 2 (citing 594 F.3d 1111 (9th Cir. 2010))). Alternatively, the Government argues that § 922(g)(1) is constitutional under *Bruen* and *Rahimi* because it is consistent with the Nation's historical tradition of firearms regulation. (*Id.*).

1

For the following reasons, the Court denies Doney's motion.

## I. Factual Background

The Government alleges that on or about March 10, 2023, Doney knowingly possessed a firearm and ammunition. (Doc. 20 at 2). Doney has previous felony convictions for theft, possession of dangerous drugs, forgery, and criminal endangerment. (*Id.*; Doc. 21 at 2). On November 21, 2024, Doney was indicted for violating 18 U.S.C. § 922(g)(1). (Doc. 1).

## II. Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Doney's motion is appropriate for pre-trial resolution because it solely involves a question of law.

## III. Analysis

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2022, the Supreme Court decided *Bruen* finding that the Second Amendment's plain text coupled with an historical analysis of our Nation's gun regulation traditions protects an

individual's right to carry a handgun for self defense. *Bruen*, 597. U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

Here, Doney claims that in light of the decisions in *Bruen* and *Rahimi*, the Ninth Circuit's decision in *Vongxay* can no longer control. (Doc. 20 at 12). Doney argues that under the *Bruen* framework: (1) his alleged conduct falls within the plain text of the Second Amendment and (2) that § 922(g)(1) is unconstitutional as applied to him. (*Id.* at 15, 17).

The Government disagrees. The Government argues that this Court should adhere to the Ninth Circuit's decision in *Vongxay*, which upheld § 922(g)(1) against a Second Amendment challenge. (Doc. 21 at 2). Alternatively, the Government reasons that even if *Vongxay* does not control, this Court's post-*Bruen* holdings have found that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. (*Id.*).

Before addressing the parties' arguments in the case, the Court must briefly address the Second Amendment's jurisprudence status in the Ninth Circuit regarding § 922(g)(1). In May 2024, a Ninth Circuit three-judge panel found that 18 U.S.C. §

3

922(g)(1) was unconstitutional as applied to the nonviolent felon defendant in that case. *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). At that time, *Duarte* was the most recent decision related to the constitutionality of § 922(g)(1) in the Ninth Circuit. In July 2024, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024). The Ninth Circuit heard oral argument *en banc* on December 11, 2024. As of today, no opinion has been issued. This Court recognizes that "a decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted).

Provided the vacated status of *Duarte*, the Court will first address the authority of *Vongxay* as relied on by the Government. The Court will then analyze Doney's arguments under *Bruen* and *Rahimi*.

A.   Vongxay *Governs*

The *Vongxay* court, bound by its decision in *United States v. Younger*, 398 F.3d 1179 (9th Cir. 2005), held that "§ 922(g)(1) does not violate the Second Amendment as it applies to ... a convicted felon." 594 F.3d at 1118. The *Vongxay* holding was "buttressed by the fact that *Younger* upheld the very type of gun possession restriction that the Supreme Court deemed 'presumptively lawful.'" *Id.* at 1116 (quoting *Heller*, 128 S. Ct. at 2817 n. 26) ("[N]othing in our opinion should

4

be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons … ."). Though the legal inquiry ended with *Younger*, the court further examined caselaw and historical examples "lend[ing] credence to the post-*Heller* viability of *Younger*'s holding." *Id.*

Here, Doney argues that *Vongxay* no longer controls because *Bruen* rejected the means-end scrutiny employed by the court in *Vongxay*. (Doc. 20 at 9). Doney misconstrues the holding of *Vongxay*. As this Court has previously stated, *Vongxay* did not apply the means-end scrutiny rejected by *Bruen* which would render *Vongxay* clearly irreconcilable with *Bruen*. *See United States v. Bulltail*, CR 22-86-BLG, 2023 WL 5458780 at * 2 (D. Mont. Aug. 24, 2023). Rather, *Vongxay* applied *Heller* "to conclude that the felon dispossession statute, § 922(g)(1), is constitutional because it is consistent with longstanding limitations on gun possession and because 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" *Id.* (quoting *Vongxay*, 594 F.3d at 1118 (citing Don. D. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986))).

Doney also takes issue with the out-of-circuit caselaw and historical examples used by the court in *Vongxay* to bolster its holding. (Doc. 20 at 10–12). Doney argues first that *Rahimi* undermined the emphasis *Vongxay* placed on the link between "virtuous citizenry" and the right to bear arms. (*Id.* at 10–11 (citing *Vongxay*, 594 F.3d at 1118; *Rahimi*, 144 S. Ct. at 1903)). Second, that *Vongxay*

5

observed at the time that no court under *Heller* had found § 922(g) constitutionally suspect—which is no longer the case. (*Id.* at 11 (citing *Vongxay*, 594 F.3d at 1117)). Finally, that *Vongxay* erroneously lent credit to historical evidence of militias barring felons as a justification for Second Amendment restrictions placed on felons. (*Id.* at 11–12 (citing *Vongxay*, 594 F.3d at 1117)).

Despite Doney's contentions, this Court is bound by *Vongxay*'s holding, not its credence. *Vongxay*'s holding is clear on the matter. "[Section] 922(g)(1) does not violate the Second Amendment as it applies to ... a convicted felon." *Id.* at 1118; *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional."). Importantly, "the doctrine of *stare decisis* concerns the *holdings* of previous cases, not the rationales." *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996). "[U]nder the doctrine of *stare decisis* a case is important only for what it decides —for the 'what,' not for the 'why,' and not for the 'how.'" *Id.* *Vongxay*'s holding is clear on the matter. "[Section] 922(g)(1) does not violate the Second Amendment as it applies to . . . a convicted felon." *Id.* at 1118; *see also Whitney*, 2024 WL 1429461, at *2 ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional.").

Thus, without *Duarte*, *Vongxay*'s precedent stands, as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have

6

repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev. July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Those courts applying *Vongxay* have held that § 922(g)(1) "passes constitutional scrutiny." *Page*, 2023 WL 8702081, at *2. Therefore, Doney's challenge fails under *Vongxay*.

Though this Court finds that the *Vongxay* decision forecloses Doney's challenge, Doney asks the Court to consider the constitutionality of § 922(g)(1) under the *Bruen* framework. (Doc. 20 at 12). The Court recognizes that "*Bruen* effected a sea change in Second Amendment law." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023). Accordingly, the Court will consider the parties' arguments under the framework. *See Moore*, 86 F.4th at 1041.

B.   Bruen and Rahimi *Analysis*

The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision earlier this year in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second

7

Amendment." *United States v. Youngblood*, 740 F. Supp. 3d 1062, 1068 (D. Mont. 2024) (citing 144 S. Ct. at 1926–27 (Jackson, J., concurring)). First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* This historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S. Ct. at 1898. In doing so, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original).

### 1. Plain Text

Considering the first step of the *Bruen* test, only Doney presents arguments on whether his conduct is covered by the Second Amendment's plain text. Doney argues that he is an American citizen, and thus part of the "people" under the Second Amendment. (Doc. 20 at 15). Further, that he possessed the firearm in common use. (*Id.* at 16–17).

No higher court has ruled on whether felons are included in the "people" protected by the Second Amendment. District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, the Second Amendment right is limited to law-abiding citizens, not felons. *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 675–76 & n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[1] *Roberts*, 710 F. Supp. 3d at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope

---

[1] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *Youngblood*, 740 F. Supp. 3d at 1068 (relying on *Duarte* before it was vacated in holding that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court is not bound to apply the rights-based approach.

9

of the right and because "the people" covered by other constitutional rights only sometimes excludes felons).

As the matter is unresolved by the Ninth Circuit, the Court will assume without deciding that Doney is included in the "people" covered by the Second Amendment. *See Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

In *Heller,* the Supreme Court recognized an individual right under the Second Amendment to possess firearms in common use for traditionally lawful purposes such as self-defense within the home. 554 U.S. at 592, 627. Further, the Supreme Court in *McDonald v. City of Chicago,* found that this right is fundamental and applies to the states under the Due Process Clause of the Fourteenth Amendment. 561 U.S. 742, 778 (2010). Here, there is no evidence that Doney did not possess the firearm for a common use, such as self-defense. This Court will therefore assume, that Doney's use of the gun is a common use and covered by the plain text of the Second Amendment. Accordingly, Doney satisfies the first step of the *Bruen* test.

2. *Historical Analogues*

Moving to the second step, Doney argues that § 922(g)(1) violates his constitutional rights because under the *Rahimi* and *Bruen* framework the statute

regulates arms-bearing beyond what was done during the founding era. (Doc. 20 at 17–18). The Government disagrees, arguing § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation and constitutional under *Bruen* and *Rahimi*. (Doc. 21 at 8).

Here, the Court finds the Government's presentation[2] of well-documented court decisions demonstrates supportable historical analyses for the prohibition on the possession of weapons by felons. *See e.g.*, *United States v. Alvarez-Mora*, 3:23-cr-06-CSD, 2024 WL 1638382, at *4–6 (D. Nev. Apr. 15, 2024) (holding § 922(g)(1) is consistent with "well understood" founding-era tradition that "the government could disarm those who did not comply with certain communal obligations and abide by the norms of civic society."); *United States v. Thomas*, 2:22-cr-00129-DJA, 2024 WL 3459059 (D. Nev. July 18, 2024) (citing *Alvarez-Mora* post-*Rahimi* to hold § 922(g)(1) is consistent with nation's regularly tradition of firearm regulation); *United States v. Aguilera*, 3:19-cr-153, 2024 WL 478044, at * 9-12 (N.D. Cal. Nov. 12, 2024) (historical record that "reflects a long and well-established tradition of punishing felons," including nonviolent felons, "with

---

[2] "[C]onsideration is [ ] given to Justice Jackson's recent warning about the pitfalls of the *Bruen* methodology. Concurring in *Rahimi*, Justice Jackson cautioned: 'It is not clear what qualifies policymakers or their lawyers (who do not ordinarily have the specialized education, knowledge, or training of professional historians) to engage in this kind of assessment . . . *Bruen* also conscripts parties and judges into service as amateur historians, casting about for similar historical circumstances.'" *Youngblood*, 740 F. Supp at 1069 n. 3 (quoting *Rahimi*, 602 U.S. at 745 n.3 (Jackson, J., concurring)).

11

permanent forfeitures of life, limb, and property" is representative historical analogue for § 922(g)(1)).

Further, the Court finds that historical analogues for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4–*5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession statute). Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

12

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626. Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. 561 U.S. at 786. Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*, Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26).

Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many ... prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 144 S. Ct. at 1901) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is

13

to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation.").

The weight of the relevant caselaw, historical evidence and Supreme Court precedent demonstrates the constitutionality of 18 U.S.C. § 922(g)(1) as applied to Doney under the *Bruen* and *Rahimi* framework.

## IV.  Conclusion

IT IS SO ORDERED that Defendant Martin Andrew Doney Jr.'s Motion to Dismiss (Doc. 19) is DENIED.

DATED this 22nd day of April, 2025.

SUSAN P. WATTERS
United States District Judge